UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,      .
                               .
          Plaintiff,           .
                               .
     v.                        .
                               .   CR No. 24-0417 (CKK)
01 MALONE LAM,                 .
03 MARLON FERRO,               .
04 HAMZA DOOST,                .
05 CONOR FLANSBURG,            .
06 KUNAL MEHTA,                .
10 EVAN TANGEMAN,              .
11 JOEL CORTES,                .
14 TUCKER DESMOND,             .   Washington, D.C.
                               .   Friday, June 20, 2025
          Defendants.          .   11:42 a.m.
. . . . . . . . . . . . . .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:

For the Government:          KEVIN L. ROSENBERG, AUSA
                             U.S. Attorney's Office
                             601 D Street NW
                             Washington, DC 20530

For Defendant Lam:           JOHN P. PIERCE, ESQ.
                             Themis PLLC
                             2305 Calvert Street NW
                             Washington, DC 20008

For Defendant Ferro:         KEVIN E. WILSON, ESQ.
                             Law Off. of Kevin E. Wilson, PLLC
                             2 Wisconsin Circle
                             Suite 700
                             Chevy Chase, MD 20815

**APPEARANCES:**

| | |
|---|---|
| For Defendant Doost: | BARRY COBURN, ESQ.<br>Coburn & Greenbaum, PLLC<br>1710 Rhode Island Avenue NW<br>2nd Floor<br>Washington, DC 20036 |
| For Defendant Flansburg: | SHREY SHARMA, ESQ.<br>Oberheiden, P.C.<br>30 Wall Street<br>Suite 8th Floor<br>New York, NY 10005 |
| For Defendant Mehta: | ADDY R. SCHMITT, ESQ.<br>Kropf Moseley Schmitt, PLLC<br>1100 H Street NW<br>Suite 1220<br>Washington, DC 20005 |
| For Defendant Tangeman: | DWIGHT E. CRAWLEY, ESQ.<br>Law Off. of Dwight Crawley<br>1300 I Street NW<br>Suite 400E<br>Washington, DC 20005 |
| For Defendant Cortes: | G. ALLEN DALE, ESQ.<br>555 13th Street NW<br>Suite 500 West<br>Washington, DC 20004 |
| For Defendant Desmond: | EUGENE V. GOROKHOV, ESQ.<br>Burnham & Gorokhov, PLLC<br>1634 I Street NW<br>Suite 575<br>Washington, DC 20006 |
| Court Reporter: | BRYAN A. WAYNE, RPR, CRR<br>U.S. Courthouse, Room 4704-A<br>333 Constitution Avenue NW<br>Washington, DC 20001 |

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

(Via Videoconference)

THE COURT:  After today, what I'm going to ask is that the government give me what they think is the grouping based on how they see these cases going to trial, the evidence, and then I'll split you up and put different status dates so we're not doing everything at the same time, which makes it much more difficult.

All right.  This is United States in the case of 24-CR-417. I will call the defendants in a moment, but if the government could identify themselves, please.

MR. ROSENBERG:  Good morning, Your Honor.  Kevin Rosenberg on behalf of the United States.

THE COURT:  All right.  And the first defendant is Malone Lam.  If counsel could identify themselves.

MR. PIERCE:  Good morning, Your Honor.  John Pierce for Malone Lam, who is present in custody.

THE COURT:  All right.  Good morning, Counsel, and Mr. Lam.  If you could put your hand up?  There you are.  All right.  Good morning, Mr. Lam.

DEFENDANT LAM:  Good morning, Your Honor.

THE COURT:  Moving to Marlon Ferro, who I believe is on release.

DEFENDANT FERRO:  Hello, Your Honor.

MR. WILSON:  Good morning, Your Honor.  Kevin Wilson,

1    here on behalf of Marlon Ferro.  And Mr. Ferro is present by

2    video.

3            THE COURT:  Okay.  If you could put your hand up,

4    Mr. Ferro.  There you are.  Good morning, Mr. Ferro.  And are

5    you willing to proceed by video as opposed to in person?

6            DEFENDANT FERRO:  Yes, Your Honor.

7            THE COURT:  All right.  Moving along.

8        Hamza Doost, who is also on release.

9            MR. COBURN:  Good morning, Your Honor.  Barry Coburn

10    for Mr. Doost, who is here with us via Zoom, and he is willing

11    to proceed vie video link.

12            THE COURT:  Is that correct, Mr. Doost?

13            DEFENDANT DOOST:  Yes, Your Honor.

14            THE COURT:  All right.  And he has been recently

15    released.

16            MR. COBURN:  Yes, Your Honor.

17            THE COURT:  Okay.  Moving to Conor Flansburg, who's

18    also on release.

19            MR. SHARMA:  Good morning, Your Honor.  Shrey Sharma

20    for Mr. Flansburg.  He's joining us via videoconference.

21            THE COURT:  All right.  And good morning.  And are you

22    willing to proceed by video as opposed to in person?

23            DEFENDANT FLANSBURG:  Yes, Your Honor.

24            THE COURT:  All right.  Mr. Mehta?

25            MS. SCHMITT:  Good morning, Your Honor.  Addy Schmitt

1        on behalf of Mr. Mehta, who is here in person.

2              THE COURT:  All right.  Good morning.  And good

3        morning, Mr. Mehta.

4              DEFENDANT MEHTA:  Good morning, Your Honor.

5              THE COURT:  Okay.  We move to Evan Tangeman.

6              MR. CRAWLEY:  Good morning, Your Honor.  Dwight Crawley

7        on behalf of Mr. Tangeman.  Mr. Tangeman is in the bottom box,

8        center of the screen.

9              THE COURT:  All right.  I see him.  Good morning.  And

10       are you willing to proceed by video instead of in person?

11             DEFENDANT TANGEMAN:  Yes, Your Honor.

12             THE COURT:  All right.  And Mr. Cortes?

13             DEFENDANT CORTES:  Good morning, Your Honor.

14             THE COURT:  Good morning.

15             MR. DALE:  Good morning, Your Honor.  Allen Dale on

16       behalf of Mr. Cortes, who likewise is willing to proceed by

17       video.

18             THE COURT:  All right.  And are you willing to proceed

19       by video as opposed to in person?

20             DEFENDANT CORTES:  Yes, Your Honor.

21             THE COURT:  Okay.  All right.  And our last person is

22       Tucker Desmond.

23             DEFENDANT DESMOND:  Good morning, Your Honor.

24             THE COURT:  Good morning.

25             MR. GOROKHOV:  Good morning, Your Honor.  Eugene

1    Gorokhov on behalf of Mr. Desmond.

2            THE COURT:  Good morning.  And good morning,

3    Mr. Desmond.  And are you willing to proceed by video as

4    opposed to in person?

5            DEFENDANT DESMOND:  Yes, Your Honor.

6            THE COURT:  All right.  So as I said, this is the last

7    time I'll have all of you at once, but I wanted to bring

8    different groups in.  There's a few issues that still remain

9    for some of you that I need to resolve.  But at least I wanted

10   to move the case forward.

11       I believe that everybody has been arraigned.  Am I correct?

12   Some were in California, but I think everyone has been

13   arraigned including Mr. Doost.  Is that correct, counsel?

14           MR. DALE:  Yes, Your Honor.

15           THE COURT:  All right.  So the dates for 70-day speedy

16   trial.  If they're on release it's August 29.  If they're

17   locked up it's September 18.

18       Let me move at this point to where we are with discovery

19   and how we're going forward.  So let me start with the

20   government.

21           MR. ROSENBERG:  Thank you, Your Honor.  All defense

22   counsel who transmitted hard drives to the government have

23   received those hard drives back with approximately 1.5

24   terabytes worth of discovery.  There was one technical glitch

25   with Mr. Mehta's hard drive which I'm working through with his

1    current defense attorney -- well, defense counsel who's in

2    court today.  And then Mr. Ferro's attorney just provided me a

3    hard drive a few minutes ago.

4        So we have turned over all discovery pursuant to Rule 16

5    that was developed and in our possession up until the date of

6    arrest, and what we're doing now is continuing, obviously, to

7    organize the follow-on discovery, which would be photographs,

8    search warrant body-worn cameras from the May search warrants,

9    things like that.  So there will be continued discovery, but

10   that initial tranche that led to the superseding indictment of

11   1.5 terabytes is in defense counsel's possession.

12            THE COURT:  How much more do you -- I won't hold you to

13   this, but approximately how much more discovery is out there

14   that needs to be made available?

15            MR. ROSENBERG:  Of course.  Well, all devices -- all

16   the devices that were seized from the defendants during their

17   arrests or searches, to the extent that the FBI is able to

18   access the phones, those Cellebrite downloads from those

19   phones will be provided as well as any tablets in their

20   possession.  Sometimes these phones, if they have the

21   six-digit code, the FBI equipment could access the phone in a

22   month or two years.  Because the encryption is so

23   sophisticated.

24            THE COURT:  Okay.

25            MR. ROSENBERG:  That's just to say that there may be

1    more devices coming that were taken and need to be produced.

2    And then as we receive reports and the reports from the search

3    warrants and the photos, those will be rolled out.

4        But the large bulk has already been produced, and

5    everything that we had in our possession that led to the

6    charges, that supports these charges has been produced.

7        THE COURT:  When would the next discovery, large group

8    of discovery be provided?  Are you doing it on a rolling basis

9    or are you doing it in different tranches?

10       MR. ROSENBERG:  Our primary focus was getting the large

11   production done as fast as possible.  That would be everything

12   that led and supported the initial superseding indictment.  So

13   that was three cell phones, a PC, and thousands of documents.

14   So from now on what we would do is more of a rolling basis

15   just to keep it moving, as opposed to waiting for everything

16   that we collect in two months -- in a two-month period and

17   then doing a production, waiting another month, doing a

18   production.

19       If defense counsel wants it in a more bulk fashion, we

20   could do that.  However they prefer, I can accommodate it.

21       THE COURT:  Okay.  In terms of Mr. Lam, who obviously

22   had received a lot of the discovery before the superseding

23   indictment, I'm taking it that he's receiving along with the

24   others the discovery he would not have totally received

25   beforehand.

1          MR. ROSENBERG:  Yes, Your Honor.

2          THE COURT:  Okay.

3          MR. ROSENBERG:  And then everything that Mr. Lam had

4     received has also been re-produced to all of his

5     coconspirators.

6          THE COURT:  So they received everything that Mr. Lam

7     had originally, Mr. Lam is now going to or is receiving what

8     he had not gotten before.  So everybody is going to be on the

9     same roughly schedule of getting discovery.

10          MR. ROSENBERG:  Exactly, Your Honor.

11          THE COURT:  Okay.  Obviously, we need -- from Mr. Lam's

12     perspective and the rest, we need a new scheduling order.  I

13     don't know at this point -- it doesn't sound like today is the

14     day to do it.  Sounds like we need at least one more status,

15     maybe more than that, to sort of see where everybody is.

16       But I think at least at the next one we should consider

17     setting a schedule up which involves discovery, the typical

18     things, which I think most of you who have had cases with me

19     in one form or another know what I do.  So perhaps we could be

20     prepared at the next status to do that since there are quite a

21     number of defendants and I want to move the case.

22       Have there been pleas offered?  Any interest in that area?

23     I don't have to go through it right now.  And are they wired,

24     not wired?  What's happening with that?

25          MR. ROSENBERG:  Sure, Your Honor.  We've been in plea

negotiations with a few defendants, and I think that what will
be helpful is giving the defendants and defense counsel a bit
of time to digest the evidence that we produced.  I know
Mr. Crawley reached out and asked about some of the evidence
this morning, and I turned around and sent him, you know, five
different PDFs with cell phone extracts, just to help him go
through all the terabytes.

So I would say that I anticipate a few pleas coming in in
the next 30 to 45 days.  I think that might make this case a
bit more manageable for scheduling and dividing trial groups.
But I understand the Court's interest in moving it along and
setting dates.

THE COURT:  Well, I think it's just easier to have
these discussions without having all 12 or whatever group we
have now, to have it split.  I would do it probably the same
day, just at different times so it's easier to talk to people.
You know, not push them off so that they're not -- everybody
isn't marching roughly at the same speed unless we have some
interest in pleas or whatever where people may be split off or
we have issues with counsel's schedule.

Anything else that needs to be brought to my attention at
this point?

MR. ROSENBERG:  No, Your Honor.  Thank you.

THE COURT:  What would you suggest, and then I'll hear
from defense counsel, in terms of the next status, and roughly

1    how far out?  And also if you can tell me what grouping, how

2    you would split it.

3            MR. ROSENBERG:  Sure.  I have it on my computer.

4            THE COURT:  All right.  If you can tell me what group 1

5    is.  This doesn't have to be permanent.  This is at least a

6    first from the government's perspective how they see it in

7    terms of their cases moving forward.  But also just makes it

8    easier to have the status hearings in terms of broken up.  So

9    to just not have them be random but have some theory to it.

10       So the first group would be whom?

11            MR. ROSENBERG:  Sure, Your Honor.  The first group

12    would be Malone Lam, Kunal Mehta, Marlon Ferro, Evan Tangeman

13    and Conor Flansburg.

14            THE COURT:  All right.  So group 2 would be Mr. Doost,

15    Mr. Cortes, and Mr. Desmond?

16            MR. ROSENBERG:  Yes.  Yes.

17            THE COURT:  So Desmond, Cortes, Mr. Doost.  Okay.  All

18    right.

19       And how far out are you suggesting?  I'll hear from defense

20    counsel.

21            MR. ROSENBERG:  I'd really defer to them, but in my

22    experience I would think that something between -- something

23    around 45 days would at least give them enough time to digest

24    the evidence with their clients, decide if they want to engage

25    in plea negotiations or not, and then at least when we come

1    back we can tell the Court, these are for sure trials, these

2    are headed toward pleas, and then that way we don't clog up

3    the court's docket with things that are going to end up in

4    pleas down the road anyway.

5         THE COURT:  All right.  Let me hear from defense

6    counsel if there's anything you want to bring up about

7    discovery.  Let's start with that.  And if you'd identify your

8    name and who you're representing, it makes it easier.

9         MR. PIERCE:  Your Honor, John Pierce for Mr. Lam.  I

10   haven't had a chance to address this with the government yet.

11   As the Court knows, I'm new to the case.  But when I have had

12   an amount of discovery like this with a client detained, at

13   the D.C. jail they had a laptop and they were able to review

14   discovery that way.

15   My understanding is that those arrangements have not been

16   made at Alexandria jail where Mr. Lam is being detained.  So I

17   need to inquire with the court or perhaps I submit a request

18   for an order or something.

19        THE COURT:  Okay.  I must admit I don't know.  I know

20   what the procedures are for the jail and we've worked out

21   something of moving them up on the list.  The Alexandria jail,

22   I'm not sure, but I will double-check.  We've been working to

23   some degree with FPD because they've been sort of the point

24   person to work around these issues of making sure that

25   discovery is made available to defendants.

1          MR. PIERCE:  And I haven't reached out to FPD yet

2     either.

3        And then with respect to scheduling, I should note for the

4     Court that I have a six-week trial scheduled before Judge

5     Mehta.  January 20 is the start date of that.

6          THE COURT:  Okay.  Well, let's deal with status

7     hearings first in terms of getting it.  My calendar is also

8     moving around in terms of -- so I have some openings, etc.,

9     that are starting to come up.

10        Mr. Crawley?

11          MR. CRAWLEY:  Yes, Your Honor.  On behalf of

12     Mr. Tangeman, but I believe this applies to several of the

13     other defendants, as the Court is aware, the Court suggested

14     that we consider a coordinating discovery attorney, commonly

15     referred to as a CDA.

16          THE COURT:  Right.

17          MR. CRAWLEY:  I have reached out to an individual

18     that's willing to help.  I think at this point there are only

19     four attorneys that are appointed.  And the way it works is

20     that the CDA will only provide the discovery through the

21     defendant services to the court-appointed counsel, but that

22     the retained counsel can still work with that CDA, they would

23     just have to retain that individual.

24          THE COURT:  Right.

25          MR. CRAWLEY:  At this point, we do believe we may need

1    the CDA, but to Mr. Rosenberg's point, I sent him an email at

2    about 2:30 this morning, he did respond to it by seven o'clock

3    this morning.  He sent me a considerable amount of extracted

4    information just related to my client.  My estimation is it

5    totals over a thousand pages.  That's going to take a

6    considerable amount of time to go through and I expect that he

7    will have more information for me going forward.

8        The other issue I'm going to have, Your Honor, is I'm going

9    to have to travel to California to meet with Mr. Tangeman, so

10    you will probably get a request from me in that regard.

11            THE COURT:  Okay.

12            MR. CRAWLEY:  So it's going to take a considerable

13    amount of time.  I think 45 days is a little bit quick.

14            THE COURT:  Okay.  You all tell me what works for you.

15    You're the one looking at the discovery.  I don't want to have

16    hearings if they're not going to go anywhere, not that I can't

17    deal with individual things in the meantime, but at least in

18    terms of coming in and setting dates for further things and

19    ultimately setting a schedule.  So whatever it is that you

20    think.  And you can talk among yourselves.

21            MR. CRAWLEY:  And I guess because we're in the first

22    group, Mr. Tangeman and I, we will just talk with the first

23    group of attorneys concerning that.

24            THE COURT:  Right.

25            MR. CRAWLEY:  Thank you, Your Honor.

1          THE COURT:  I had suggested and I don't have a problem

2     with using the discovery -- I forgot what they call them, but

3     anyway, the coordinator, in terms of doing it.  It made sense

4     to me with this many people and the technical issues, that

5     they may be more of assistance and move things along a little

6     faster for you all.

7        My understanding is that technically they only do it with

8     those that are appointed, but they indicated that those that

9     are not appointed can still take advantage of the system.

10         MR. CRAWLEY:  Yes, Your Honor.

11         THE COURT:  I'll put it that way.  It's just in terms

12    of appointing them, they have to be connected to CJA-appointed

13    people.  Otherwise, they can still provide assistance with it.

14    So you all hopefully will be able to take advantage of it, and

15    it probably will start with those that are CJA-appointed to

16    begin with.

17         MR. CRAWLEY:  Thank you, Your Honor.

18         THE COURT:  Okay.  Anything else that anybody wants to

19    raise about discovery?

20         MS. SCHMITT:  Good morning again, Your Honor.  Addy

21    Schmitt on behalf of Mr. Mehta.  So as you can see, my client

22    is also currently detained, and this is going to be a

23    challenge.  He is currently incarcerated --

24         THE COURT:  And I have his motion which I will rule on.

25         MS. SCHMITT:  Thank you.  You know, two hours away.  I

do not know that facility's protocol with respect to
discovery.  I will ascertain that as soon as possible.

I am concerned about rolling productions, and I certainly
understand that the government has to process data.  I liked
where Your Honor was going, of course, in pushing the
government to identify when we will get discovery, because
although the discovery that led to the charges will be
helpful, obviously to the extent the government is
ascertaining new information, we need that as quickly as
possible.

And I would also, and I do routinely ask in cases if the
Court will consider ordering the government -- and to be fair,
I haven't had an opportunity to ask Mr. Rosenberg.  Maybe he
will volunteer without an order.  To the extent the government
has identified key documents or things like that, rather than
a discovery dump essentially, I hope the Court will consider
ordering the government to identify that information, and that
will expedite things tremendously.

THE COURT:  As I recall, what has been done is that the
key documents have been identified along the way, to the
extent that the government views them as key from their
perspective.  I mean, obviously, they're not going to decide
what's key for you, but at least from their perspective so you
know what they're looking at.

MR. ROSENBERG:  Sure, Your Honor.  And look, I -- I

1    understand.  I don't think an order is necessary for me to

2    point things out.  I just highlighted that I got an email from

3    Mr. Crawley.  We've had a long working relationship.  He asked

4    me this morning if I could point him to some evidence, and at

5    7 a.m. this morning I sent him back five cell phone group

6    chats from extractions and said, hey, start with this.

7        So this isn't a "hide the ball" thing.  If you ask me, I'll

8    gladly point anyone to what we view as the most incriminating

9    evidence against their client.  But a court order for me to do

10    it is --

11        THE COURT:  No, if it can be done amicably and

12    collegially, I'd rather you all did it that way.  If it comes

13    to a point where that's not working, you can obviously let me

14    know.  Obviously, you still have Brady obligations in addition

15    to your deciding what you think are the key documents.

16        Okay.  Anything else in terms of the discovery?

17        MR. DALE:  Good morning again, Your Honor.  Allen Dale

18    on behalf of Mr. Cortes.  I've received the large hard drive

19    amount of discovery, and I can likewise reach out, now that I

20    know the government is willing to point us in the right

21    direction, and get the discovery there.  But also, just from

22    looking at what's on that hard drive or just the index of the

23    hard drive, it's going to take some time.

24        I spoke with counsel for Mr. Doost and Mr. Desmond.  We're

25    the third in that group.  And we would ask to come back the

last week of August for the next status.  We think we can get
through the discovery by then.

THE COURT:  Okay.  Let me take a look at that in terms
of the timing of it.  Okay.  Anything else that we need to
discuss other than at this point get -- any other issues?
There is, I believe -- hold on one second.  I know Mr. Mehta,
we have something there, and -- let me ask one thing.

(Court conferring with law clerk.)

I believe Mr. Desmond, there was an issue that was raised
about changing release conditions, which I have not received.
So I'll wait to the end to do that.  Okay?

MR. GOROKHOV:  Yes, Your Honor, thank you.

THE COURT:  I didn't get anything, but you had raised
it once before.

Mr. Wilson?

MR. WILSON:  Kevin Wilson again, Your Honor, on behalf
of Marlon Ferro.  One issue we have and we're looking to the
Court for guidance is a search warrant was executed on my
client where my client was residing in an apartment.  And I
would assume that law enforcement took the things that they
needed out of the apartment.

However, his remaining items are being held by the
management company of the apartment.  And particular things
that he need is like his birth certificate and records for his
cat as well as some personal items.  But they've told him that

they will not allow him to enter into the apartment or rummage
through the items that were left behind until they get a court
order.

THE COURT:  I think you should talk to Mr. Rosenberg
about what needs to be done.  That's not in this area, right,
so it's whatever they decided?  Mr. Rosenberg, do you know
anything about this?

MR. ROSENBERG:  So if I heard it right, an L.A.
apartment complex is telling their client that Mr. Ferro can't
enter his property?

THE COURT:  Who is saying this, Mr. Wilson?

MR. ROSENBERG:  It doesn't -- I think what happened was
he was evicted, and maybe the complex isn't letting an evicted
person back in, but I have nothing to do with some private
apartment complex making rules about their property.

THE COURT:  Is it the private or are you talking about
somebody else.

MR. WILSON:  Well, one, he wasn't evicted.  It's just
that his name wasn't on the lease.  And because of the police
activity and his name not being on the lease, they will not
let him come back.

THE COURT:  But who is it that will not let him come
back, the apartment?

MR. WILSON:  Yes.

THE COURT:  You know, I'm not sure -- that sounds like

1    it should have some negotiation at that point.  I don't have

2    any authority over the apartment complex, if he's been

3    evicted.

4        MR. WILSON:  The reason I brought it to the Court's

5    attention is because they specifically said if they had a

6    court order, they would allow him to enter --

7        THE COURT:  Well, if you can come up with how -- what

8    jurisdiction, I would have to tell the apartment complex that

9    when somebody gets evicted they can do it?  I don't think I

10   do.  I do think you can indicate that at this point, if he's

11   been evicted and he's not going to be back there, that there's

12   nothing in there -- unless he owes money or something.  I

13   don't know what the -- that the police are not holding things

14   up if that's accurate.  So it's strictly whatever their rules

15   are.  Does he owe money?

16       MR. WILSON:  No.  He's simply not on the lease.  It has

17   nothing to do with him having been evicted.  His name is not

18   on the lease.  The lease was in someone else's name, although

19   he resided there.

20       THE COURT:  So because his name is not on the lease,

21   they won't let him get it?

22       MR. WILSON:  Correct.

23       THE COURT:  Well, is the other person who -- hold on

24   one second.

25       MR. ROSENBERG:  Your Honor, if the man was living

1     there, and -- it seems like he would know who's on the lease,

2     I don't see how that's -- not to be flip, but --

3          THE COURT:  Mr. Wilson, I don't see how the court has a

4     role in terms of telling them what to do.  If there is

5     somebody who was on the lease that can go -- I assume it's

6     because he's not on the lease, they don't want to release

7     property because they don't know whether it's his or not.

8          MR. WILSON:  Correct.  Even though it's his birth

9     certificate.

10         THE COURT:  Okay.  Well, maybe you can talk to them

11    about the birth certificate.  Or whoever was on the lease, is

12    that person able to go back and get this stuff?  I mean, if

13    they're on the lease, they should be willing to release it to

14    that person.

15         MR. WILSON:  We can find out who's on the lease.  I

16    just didn't ask the question.  But Mr. Ferro is here by video.

17    It's not like we're trying to hide --

18         THE COURT:  Right.  No, I understand.  All I'm saying

19    to you is I don't have -- I don't think I have authority to

20    tell the apartment complex what to do, at least as you've

21    described it.  So you could certainly indicate to them there's

22    no police thing.  If they're willing to let him go in and he

23    can show the birth certificate and just take that away and

24    that's all he wants, they may be willing to do that.

25         Otherwise, whoever is on the lease could certainly probably

go back and get this material including the birth certificate.
But at least at this point, I don't see doing an order.  If
there are continuing problems, get back to me, and I'll see
what I can do.

All right.  Anything else besides setting status dates?
All right.  Do you want to talk among yourselves about dates
or have you sort of come up with something?  I can give you
five minutes to chat among yourselves or not.

Okay.  Why don't I let you do that while I put a couple of
things together.

(Counsel conferring.)

MR. CRAWLEY:  Your Honor, does the Court have
availability on August 11 for group 1?

THE COURT:  Okay.  Hold on one second.  No.

MR. CRAWLEY:  No?

THE COURT:  No.  I don't have a lot of time in August.
I have early time in August, and -- let me take a look for a
second.  Hold on.

MR. DALE:  Your Honor, on August 25, group 2 would
suggest -- request [inaudible].

Your Honor, group 2 is suggesting either August 25, 26, or
the 28th of August.

THE COURT:  All right.  Let me look.  Yeah.  August 25
in the afternoon would work.

MR. DALE:  That works for us, Your Honor.

1          THE COURT:  Okay.  How about two o'clock?  Does that

2     work for people?

3          MR. DALE:  Yes, Your Honor.

4          THE COURT:  Okay.  That was group 2.  So let me go

5     through each of these in terms of making sure -- so starting

6     with Mr. Lam.

7        Mr. Lam, do you remember your speedy trial rights?

8          MR. CRAWLEY:  Your Honor --

9          DEFENDANT LAM:  Yes, Your Honor.

10          MR. CRAWLEY:  Your Honor, so group 2 just spoke, Your

11     Honor.

12          THE COURT:  Oh, I'm sorry.

13          MR. CRAWLEY:  Group 2 can do the 25th.

14          THE COURT:  Okay.  Hold on, hold on.  I had them

15     divided up.  So we're talking about Mr. Doost, Mr. Cortes, and

16     Mr. Desmond.  Is that correct?

17          MR. DALE:  Yes, Your Honor.

18          THE COURT:  And you're looking at the August 25th date

19     at 2:00.  Now, are people willing to do August 25th but later

20     in the afternoon or before the afternoon?  It would be easier

21     to have them back to back in terms of -- although separate,

22     moving together.

23          MR. CRAWLEY:  On behalf of group 1, Mr. Wilson is

24     unavailable that week except for the 28th.  So group 1 was

25     going to ask for the 28th.

1    THE COURT:  All right.  Then let me look at the 28th.

2    Hold on.

3    MR. CRAWLEY:  I think group 2 can do the 28th as well.

4    THE COURT:  I can do the 28th in the afternoon.

5    MR. DALE:  So, Your Honor, if you're wanting us to do

6    them back to back, group 1 can also do the 28th.

7    MR. CRAWLEY:  Both groups can do the 28th.

8    THE COURT:  Okay.  So why don't we do 1:30 and 2:30.

9    Okay?  So we'll have -- I'll do the larger group at 1:30.

10    (Court conferring.)

11    Yeah.  That should work.  So we'll do August 28.  I'll call

12    it the Lam et al. group in terms of -- as the first one.  And

13    I'll make it 1:30.  So let me start with this group.

14    So, Mr. Lam, do you remember your speedy trial rights?

15    DEFENDANT LAM:  Yes, Your Honor.

16    THE COURT:  Okay.  Are you willing to not count from

17    today's date, June 20, till August 28 at 1:30?  And I'm

18    hopeful at that point discovery will have moved far enough

19    along that we can start doing a schedule to move a full

20    template at that point, or at least discuss it and put one out

21    so we can start getting a trial date and stuff.

22    MR. PIERCE:  Your Honor, I've instructed Mr. Lam not to

23    willingly waive his speedy trial.

24    THE COURT:  Okay.  I will note that and -- is that your

25    position, sir?

1      DEFENDANT LAM:  Yes, Your Honor.

2      THE COURT:  Okay.  And I'll write something up relating

3   to that, as I have -- I denied the motion to sever.  And the

4   scheduling order, now that we have so many other people

5   involved, I had vacated and we will do a new one.

6      Okay.  Moving to Mr. Ferro.  So this will be 1:30, August

7   28.  Correct?

8      MR. WILSON:  Correct.

9      THE COURT:  Do you, Mr. Ferro, remember your speedy

10  trial rights?

11     DEFENDANT FERRO:  Yes, Your Honor.

12     THE COURT:  Okay.  And the 70 days is actually August

13  29.  But are you willing not to count from today's date, June

14  20, till August 28 to get the discovery, be able to review it

15  and start considering what direction you want to take the

16  case?

17     DEFENDANT FERRO:  Yes, Your Honor.

18     THE COURT:  All right.  Then I'll find it's in the

19  interest of justice, the community, and the defendant for

20  Mr. Ferro to continue his speedy trial rights from June 20 to

21  August 28.

22     All right.  The next one, I believe, is Mr. Flansburg?  All

23  right.  Mr. Flansburg, do you remember your speedy trial

24  rights?

25     DEFENDANT FLANSBURG:  Yes, Your Honor.

1      THE COURT:  Are you willing not to count from today's

2  date, June 20, to August 28 at 1:30 in order to review the

3  discovery and start making some decisions about what direction

4  you want to take the case?

5      DEFENDANT FLANSBURG:  Yes, Your Honor.

6      THE COURT:  All right.  Then I'll find it's in the

7  interest of justice, the community and Mr. Flansburg to

8  continue the speedy trial rights between June 20 and August 28

9  in order to review discovery and make some decisions about the

10  direction of the case.

11  Mr. Mehta?

12      DEFENDANT MEHTA:  Yes, Your Honor.

13      THE COURT:  Do you remember your speedy trial rights?

14      DEFENDANT MEHTA:  Yes, Your Honor.

15      THE COURT:  Are you willing to continue them from June

16  20 to August 28 at 1:30 in order to get discovery, make some

17  decisions about what direction you want to take the case?

18      DEFENDANT MEHTA:  Yes, Your Honor.

19      THE COURT:  All right.  I'll find it's in the interest

20  of justice, the community, and the defendant Mr. Mehta to

21  continue his speedy trial rights between June 20 and August

22  28.

23  And Mr. Tangeman.  Do you remember your speedy trial

24  rights?

25      DEFENDANT TANGEMAN:  Yes, Your Honor.

1        THE COURT:  Are you willing not to count from today's

2    date, June 20, till August 28 at 1:30 to get discovery, have

3    some discussions about the direction of the case?

4        DEFENDANT TANGEMAN:  Yes, Your Honor.

5        THE COURT:  All right.  Then I'll find it's in the

6    interest of justice, the community, and Mr. Tangeman to

7    continue his speedy trial rights between June 20 and August 28

8    to review discovery and to consider the direction of the case.

9      All right.  So that takes care of that grouping.  And let

10   me move to Mr. Doost.  There you are.  So, do you remember

11   your speedy trial rights?

12       DEFENDANT DOOST:  Yes, Your Honor.

13       THE COURT:  And they were explained to you, I take it,

14   by counsel, since this is your first appearance before me.

15       MR. COBURN:  They have been, Your Honor.

16       THE COURT:  So are you willing not to count from

17   today's date, June 20, to the next time, August 28 at 2:30, to

18   review discovery and start making some decisions about the

19   direction of the case?

20       DEFENDANT DOOST:  Yes, Your Honor.  I'm willing to

21   waive my rights to a speedy trial.

22       THE COURT:  Okay.  So then I'll find it's in the

23   interest of justice, the community, and the defendant

24   Mr. Doost to continue his speedy trial rights between June 20

25   and August 28.

1        MR. COBURN:  Thank you, Your Honor.

2        DEFENDANT DOOST:  Yes, Your Honor.

3        THE COURT:  And Mr. Cortes.

4        MR. DALE:  Yes.  Allen Dale for Mr. Cortes.  He's been

5    explained his speedy trial rights and is willing to exclude

6    between now and August 28.

7        THE COURT:  All right.  Do you remember your speedy

8    trial rights, Mr. Cortes?

9        DEFENDANT CORTES:  Yes, Your Honor.

10       THE COURT:  Okay.  Are you willing not to count from

11   today's date, June 20, to August 28 at 2:30 when we come back,

12   in order to review discovery and start making some decisions

13   about the direction of the case?

14       DEFENDANT CORTES:  Yes, Your Honor.

15       THE COURT:  All right.  Then I'll find it's in the

16   interest of justice, the community, and the defendant

17   Mr. Cortes to continue his speedy trial rights between June 20

18   and August 28 to review discovery and consider his speedy

19   trial rights.

20     And the last one is Mr. Desmond.

21       MR. GOROKHOV:  Yes, Your Honor.  We've discussed the

22   speedy trial rights and Mr. Desmond is willing to waive those

23   rights until the hearing on August 28.

24       THE COURT:  All right.  Do you remember your speedy

25   trial rights?

1          DEFENDANT DESMOND:  Yes, Your Honor.

2          THE COURT:  And are you willing to continue your speedy

3     trial rights between June 20 and August 28 in order to review

4     discovery and make some decisions about the direction of the

5     case?

6          DEFENDANT DESMOND:  Yes, Your Honor.

7          THE COURT:  All right.  Then I'll find it's in the

8     interest of justice, the community, and the defendant

9     Mr. Desmond to continue his speedy trial rights between June

10    20 and August 28.

11         MR. GOROKHOV:  Thank you, Your Honor.

12         THE COURT:  All right.  There are two things to

13    consider, two things that are left.  Mr. Mehta's motion for

14    reconsideration, and I think that has been I believe fully

15    briefed.  So I may set a hearing on that date.

16       The other is the government's position on Mr. Desmond's --

17    regarding modifications for release conditions.  I'm not going

18    to have everybody wait around for this.  Those are the two

19    things that are pending for me to make a decision.  So let me

20    ask, for everybody else other than Mr. Mehta and Mr. Desmond

21    and his counsel, is there anything else that I need to address

22    at this point?

23         MR. SHARMA:  Afternoon, Your Honor.  Shrey Sharma for

24    Mr. Flansburg.  I'm going to request for Mr. Flansburg, and I

25    assume that most of the other counsel whose clients are

1    appearing via videoconference would join as well, given that

2    August 28 is just a status conference date, whether our

3    clients, at least my client would be permitted to join via

4    videoconference given that he's out in California.

5            THE COURT:  For those that are at this point -- does

6    the government have a position before I make a decision about

7    doing Zoom for those that are out-of-state, in California?

8            MR. ROSENBERG:  No.  I think that makes sense, Your

9    Honor.  If we get to the point where defendants need to

10   verbally acknowledge plea agreements and reject them on the

11   record and we get to that point, it would make sense for the

12   trip.  But I agree with counsel.

13           THE COURT:  I don't have any problem.  I'll make sure

14   that in the orders we do I'll indicate whether Zoom is

15   appropriate or not.  But I don't have a problem with -- this

16   is going to be predominantly a scheduling conference in terms

17   of picking dates going forward and setting things out.  I

18   don't think that they need to be present for that.

19           MR. SHARMA:  Thank you, Your Honor.

20           THE COURT:  If any defense counsel decides they do

21   think their client should be present, just let me know and

22   we'll make sure.  But otherwise I'll assume it's Zoom.  If

23   they're in the jurisdiction, obviously, they'll be here.  But

24   I do want counsel here because it's too difficult, frankly, to

25   try and do all of these by Zoom with counsel and the parties.

1      Okay.  So everybody can leave.  The only ones I want to
2  have stay is Mr. Desmond and then Mr. Mehta in terms of
3  potential release.  Thank you.
4      (Excused parties exit.)
5      All right.  Let me set -- let me do Mr. Desmond's quickly.
6  Did you see -- counsel for Mr. Desmond did file asking for
7  modifications.  They basically relate to the technology.  And
8  he did not indicate what your position was.
9      Let me indicate that I'm putting out a new order that
10 requires, as I do in my civil cases, that when motions are
11 filed that you check with the other side and actually tell me
12 their position so I'm not running after them trying to find
13 them.
14             MR. GOROKHOV:  If I may, Your Honor, we did email --
15             THE COURT:  I know, but you still need -- you're going
16 to see my new order which requires you to follow up.  If they
17 aren't cooperative, that's a different issue.  But otherwise
18 I'm left checking on it.  I don't have that time.
19             MR. GOROKHOV:  I understand, Your Honor.  Okay.  We'll
20 look forward to the order.  Thank you.
21             THE COURT:  Okay.  So my question, though, is have you
22 seen it, Mr. Rosenberg?  If you haven't, I'll set a date if
23 you want to respond to it.
24             MR. ROSENBERG:  I have seen it, Your Honor.  I was
25 reading it as you were raising the issue.

1          THE COURT:  Do you want to file a written response?

2          MR. ROSENBERG:  I can, Your Honor.

3          THE COURT:  I'm sorry?

4          MR. ROSENBERG:  I will.  I can.  I must not have seen

5     counsel's email about getting a new phone.

6          THE COURT:  Okay.  So when do you want to respond?

7     That's why I'm putting out a new order that I'm not the one

8     tracking everybody.

9          MR. ROSENBERG:  I can respond by Monday, Your Honor.

10         THE COURT:  Okay.  We're talking about the 23rd.

11         MS. FORBES:  Your Honor?  This is pretrial.  I would

12    like to put on the record that courtesy supervision notified

13    us that they can't track iPhones.  So the new phone would have

14    to be Android.

15         THE COURT:  Okay.

16         MR. GOROKHOV:  And that is the problem, Your Honor.

17    That's the issue we're raising.

18         THE COURT:  Okay.  Well, if you can't track it, then

19    I'm not going to be as enthused about letting it go.  So let

20    me see if I understand it.  You can't do -- well, you need to

21    come up here so we get a record.

22         MR. GOROKHOV:  Yes, Your Honor.

23         THE COURT:  Can I ask Mr. Rosenberg for a quick second

24    so we can clarify this.

25         MR. GOROKHOV:  Yes, Your Honor.  So yeah, that's the

1    nature of the issue.  I've never had pretrial tell me they

2    can't track an iPhone.  My client's entire data is connected

3    to his iPhone and to his iCloud account.  He can elaborate if

4    necessary, Your Honor.  He is prepared to provide the Court

5    with some details today.  But it's just a strange thing.  My

6    understanding --

7            THE COURT:  Well, they can either do it or they can't.

8    If they can't, they can't.  So if I could ask pretrial, is

9    that because you're tracking it?  Is he living in a place

10   where they would track it?

11           MS. FORBES:  According to courtesy supervision, the

12   software does not work with iPhones; it only works with

13   Androids.

14           THE COURT:  Okay.  And that's D.C.  Right?  No?

15           MS. FORBES:  That's California.

16           THE COURT:  That's California.  Oh, okay.

17           MS. FORBES:  Yes, Your Honor.

18           THE COURT:  Okay.  All of these different places have

19   different issues.  Okay.  Well, I'll hear from the government,

20   but I'm less enthused about having something that cannot be

21   tracked, especially based on what's involved in this case.

22   I'll hear what the government has to say.

23           MR. GOROKHOV:  Thank you, Your Honor.

24           THE COURT:  So the issue is whether he doesn't use an

25   iPhone but an Android -- well, that he can use an iPhone which

1    cannot be tracked is what it comes down to.  So I'll wait to

2    hear what your position is.  Can you still get it in Monday or

3    you need more time?

4        MR. ROSENBERG:  No, Your Honor.  Monday's fine.

5        THE COURT:  Okay.  So we take care of that, so that

6    group is excused.

7        MR. GOROKHOV:  Thank you, Your Honor.

8        THE COURT:  All right.  In terms of Mr. Mehta, what I'd

9    like to do is to set a date to bring you back.  I've had a lot

10   of these motions at the same time.  So I can take a look at it

11   a little more carefully.  It's fully briefed, and I know that

12   the government has opposed it.  You have come back with a

13   motion to reconsider addressing certain issues that you feel

14   respond to what I had raised.

15     Let me ask the government, have you looked at what they

16   have filed in response?  I don't know whether you've had a

17   chance to.  In other words, I've issued it.  They filed a

18   motion to reconsider.  Have you seen that?

19       MR. ROSENBERG:  Yes.  And I believe I responded --

20       THE COURT:  Okay.

21       MR. ROSENBERG:  -- to their motion to reconsider.  So I

22   think the Court has a lot of information just based on all the

23   cross filings.

24       THE COURT:  Okay.  That's fine.  Like I said, just

25   trying to keep track of everybody in this case and another one

1    in terms of who's in and who's out.  All right.  Let me set

2    something, if I could.

3        Are people available on the 27th, next Friday?  I have the

4    judicial conference in between so I can take a look at it.  If

5    I can rule on it without having the hearing, I will.  But I

6    think I would prefer to have a discussion.

7            MS. SCHMITT:  I'm so sorry, Your Honor.  I will be out

8    for a wedding on the 27th.

9            THE COURT:  Okay.  Hang on one second.

10       How about the day before, the 26th, in the afternoon?

11           MS. SCHMITT:  Is that the Thursday?

12           THE COURT:  That's a Thursday.

13           MS. SCHMITT:  That's the day I leave.  I'm just gone

14   the Thursday, Friday.  I could do Wednesday.

15           THE COURT:  I have the judicial conference.

16           MS. SCHMITT:  Oh, I see.  I could do the Monday or

17   Tuesday.

18           THE COURT:  The only other day is Monday.  I can try it

19   this Monday; otherwise, I'm not available at all until quite a

20   bit later.

21           MS. SCHMITT:  I can come back, Your Honor, this Monday.

22           THE COURT:  How about if we did it the 23rd at 2:30?

23   That work?

24           MS. SCHMITT:  Yes.

25           MR. ROSENBERG:  Yes.

1          MS. SCHMITT:  Thank you, Your Honor.

2          THE COURT:  Okay.  All right.  The other thing which

3     reminds me is, is it possible to have Mr. Mehta's brother on

4     Zoom?

5          MS. SCHMITT:  I am confident that that can be arranged.

6          THE COURT:  Okay.  If you can give Ms. Patterson the

7     information so she is in a position.  He would be the only one

8     on Zoom.  Everybody else is here.

9          MS. SCHMITT:  Yes.

10          THE COURT:  Okay.  That would be helpful.  Thank you.

11     All right.  Everybody is excused.  Take care, everybody.

12          (Proceedings adjourned at 12:36 p.m.)

*     *     *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify

that the foregoing pages are a correct transcript from the

record of proceedings in the above-entitled matter.




/s/ Bryan A. Wayne
Bryan A. Wayne